UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FREDDIE L. COLQUITT,

                    Plaintiff,

vs.                                     Case No.  2:03-cv-1-FtM-29SPC

GERALD CAMP, JAMES BROOKS, M.
LAFONTAIT, SGT. L. HAY, CAPT. THOMAS
ELLEGOOD, and STEVE WITHROW,

                    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court upon Defendants Hay, Ellegood and Camp's Joint Motion for Summary Judgment (Doc. #75) with attached affidavits (Exhibits #1, #2 and #3).  Plaintiff was advised of Fed. R. Civ. P. 56 (Doc. #22 at 5).  Plaintiff filed a Response in Opposition to Defendants' Motion (Doc. #79) with rebuttal affidavits (Docs. #77, #78 and #80).  This matter is ripe for review.

**I.**

Plaintiff, who is proceeding *pro se* and was previously incarcerated at the Lee County Jail[1], filed an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging violations of Plaintiff's First Amendment rights for denying Plaintiff freedom of religion

_____

[1]Plaintiff was tansferred to Okeechobee Correctional Institute as of August 16, 2006.

and retaliation.  Specifically, Plaintiff asserts that each of the above-named defendants refused to accommodate Plaintiff's dietary restrictions during the Islamic Ramadan Holy Fast and otherwise failed to provide Plaintiff with a vegetarian diet, which Plaintiff states is his religious diet (Doc. #12, hereinafter "AC"). Additionally, Plaintiff states that Defendant Hay retaliated against him after Plaintiff filed various grievances and complaints in connection with his diet issues.  Plaintiff seeks monetary damages and any other relief the Court deems proper.  AC at 10.

On December 3, 2003, after Defendant M. Lafontait was personally served with process (Doc. #36), failed to file a response to Plaintiff's Complaint, and failed to respond to the Court's Order to Show Cause (Doc. #41), the Court granted Plaintiff's Motion for Entry of Default Judgment against Defendant M. Lafontait.  (Doc. #59.)  On July 28, 2005, the Court denied Defendants Camp, Ellegood, and Hay's Joint Motion to Dismiss. (Doc. #66.)  As of the date of this Order, service of process has not been effectuated on Defendants Brooks and Withrow, the remaining employees of Trinity Food Services.  See Docs # 30, 31, 35, 37.  Defendants Ellegood, Hay, and Camp now seek summary judgment on the grounds that: (1) Defendants are entitled to qualified immunity; (2) Defendants did not deny Plaintiff his right to have a holy fast; (3) Defendants did not deny Plaintiff his religious meals; (4) Defendants did not have a custom, policy, or practice of denying Muslim inmates' religious meals.

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and

all reasonable inferences must be drawn in favor of the non-moving party.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).   However, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

**III.**

Plaintiff's Amended Complaint sets forth with specificity the dates and efforts Plaintiff allegedly undertook to ensure that his diet would conform with his religious Islamic scruples in observance of Ramadan, which for the 2002 calendar year lasted from November 6 through December 6.  Plaintiff states that his religious beliefs required that he eat no meat (receive a vegetarian diet) and fast for approximately two hours prior to sunrise until after sunset during Ramadan.  AC at 11, 20.  The following is the factual chronology of the events set forth in the Amended Complaint.

> One week prior to Ramadan, Plaintiff submitted a "prisoner's request form" to Defendant Camp to be placed on two separate lists: the "religious [vegetarian] diet" list and the list for the "Islamic (Ramadhan) Holy Fast." AC at 11.

> On November 2, 2002, Defendant Camp checked with Plaintiff to ensure he was receiving his vegetarian diet. Plaintiff advised Camp that he was not and Camp told Plaintiff he had submitted the necessary documentation and would check with Food Services to correct the problem.  Id.

> Between November 4 through November 7, Defendant Ellegood and Officers Barranco and Lopez spoke with Plaintiff concerning the fact that he had not received his vegetarian diet, nor his Ramadan fast and all officers

agreed to speak with Food Services to correct the problem. Id.

During these same dates, Officer Martarana made repeated calls to "department heads" and the Food Services Department concerning Plaintiff neither receiving his vegetarian diet nor his Ramadan fast. Id. at 12.

On November 8, Plaintiff received his morning meal after sunrise. Consequently, Plaintiff did not eat it and fasted all day until evening. Defendants Withrow and Hay "brazenly denied food" to Plaintiff for his evening meal. Hay stated that "You will not be feed [sic]." Plaintiff "begged" for his food but Defendant Hay told Plaintiff he was "wasting his time." Id.

On November 9, after Defendant Camp learned from Officer Shaffer that Plaintiff was denied his evening meal from Defendant Hay, Defendant Camp again advised Plaintiff that he "was going directly to the Food Services department." Id. at 13.

On November 13, Defendant Withrow denied Plaintiff his "religious meals" and told Officer Shaffer that he would not prepare a salad and meat substitute for plaintiff. Plaintiff filed a grievance with Defendant Camp. Id. Plaintiff also filed a complaint with the Internal Affairs Department against Withrow and Hay regarding the denial of his meals and retaliatory acts. Id. at 14.

On November 14, in the early morning hours (1:30 a.m.) Officer Zimmerman advised Plaintiff that Defendant Hay had denied his grievance from the evening before. Id. at 15. Plaintiff filed a second grievance against Defendant Hay regarding Hay's denial of the previous grievance. Id. Plaintiff was seen by a nurse and issued an extra wool blanket and given medications. Id. at 14.

Later on November 14, Officer Shainline contacted Officer Gilbert to discuss the problems Plaintiff encountered regarding his holy fast. After Officer Gilbert spoke to Plaintiff, Plaintiff states a memo was placed on the officers' station  window indicating the time of day (before sunrise, after sunset) the officers should serve the Ramadan meals. Id. at 14.

On the evening of November 14, when Officer D. Smith was escorting Plaintiff back from the showers, Defendant Hay and Officer Zimmerman approached and ordered Plaintiff

removed from the cell so Hay could conduct a "shake-down" of the cell.  Defendant Hay commented that he "didn't know why the prisoner continued to file complaints against him because the complaints were not going to go anywhere."  Id. at 15.  Defendant Hay then searched through Plaintiff's legal documents and took "a couple of sworn affidavits."  Defendant Hay also took Plaintiff's extra blanket that he had been given by the nurse and then "went through" Plaintiff's "holy fast meal" that had been delivered and took the portion of peanut butter from the meal, but left the milk, bread and fruit.  Defendant Hay then ordered Officer Smith to write Plaintiff two disciplinary reports because Officer Smith "needed some experience at writing disciplinary reports."   Id.

On November 15, Officer Smith delivered to Plaintiff the two disciplinary reports Defendant Hay ordered Smith to write charging Plaintiff with retention of article without authorization (peanut butter taken from Plaintiff's cell) and conduct interfering with security/orderly running of the institution. Id. at 13.

During the week of November 18, Plaintiff's wife contacted the Internal Affairs Department because Plaintiff's grievances were being intercepted by Defendant Hay and Plaintiff was encountering retaliatory acts by Defendant Hay.  Id. at 16.

On December 1 while at the shower, Plaintiff spoke to Defendant Camp regarding the problems Plaintiff continued to encounter with his holy fast and the continued denial of Plaintiff's vegetarian diet.   Defendant Camp told Plaintiff that he would speak with Defendant Ellegood and Sheriff Shoap.  Id.

On December 3, Officer Fernandez "refused to feed [Plaintiff] his Ramadhan breakfast."  Plaintiff did not receive a meal until the next shift.  Id. at 17.  At approximately 10:30 a.m., Officer Subach told Plaintiff that "some mysterious nurse/doctor took [Plaintiff] off his religious (Ramadhan) diet as well as his religious vegetarian diet per Mr. Books, a food service staff worker."  Plaintiff filed grievances regarding this "total removal." Id. at 17.

On the evening of December 3, at approximately 9:50 p.m., three officers including Defendant Hay escorted Plaintiff from the shower back to his cell.  Upon arriving at Plaintiff's cell, Plaintiff states Officer Fernandez was

searching Plaintiff's cell and Sgt. Hay joined in the
search.    Officer Fernandez threw  away  a  part  of
Plaintiff's Ramadan meal and threw his blanket out of his
cell. Officer Fernandez asked if Plaintiff had a medical
pass for the blanket. Plaintiff stated that the officers
knew Plaintiff had a pass. Defendant Hay ordered Officer
Fernandez to give Plaintiff another blanket. <u>Id.</u> at 18.

Plaintiff claims that, in order to adhere to his religious
tenets, he ate only partial meals, missed entire meals, and went
without any food for whole days. As a result, Plaintiff claims he
became sick and was extremely cold. <u>Id.</u> at 14.  In addition to
"severe hunger pains" Plaintiff claims he experienced a "diminished
qualitative spiritual experience" during Ramadan.    <u>Id.</u> at 12.
Further, the jail debited Plaintiff's daily subsistence cost from
Plaintiff's prison account. <u>Id.</u> at 19.

**IV.**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under
color of state law, deprives a person "of any rights, privileges,
or immunities secured by the Constitution and laws."  To state a
claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) Defendants
deprived  him  of  a  right  secured  under  the  United  States
Constitution or federal law, and (2) such deprivation occurred
under color of state law. <u>Arrington v. Cobb County</u>, 139 F.3d 865,
872 (11th Cir. 1998); <u>U.S. Steel, LLC v. Tieco, Inc.</u>, 261 F.3d
1275, 1288 (11th Cir. 2001).

In  addition,  Plaintiff  must  allege  and  establish  an
affirmative causal connection between the defendant's conduct and

the constitutional deprivation.  <u>Marsh</u>, 268 F.3d at 1059; <u>Swint v. City of Wadley</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).  A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 690-692 (1978); <u>Quinn v. Monroe County</u>, 330 F.3d 1320, 1325 (11th Cir. 2003); <u>Farrow v. West</u>, 320 F.3d 1235 (11th Cir. 2003).  Liberally construing the Amended Complaint, Plaintiff states First Amendment claims for the defendants alleged interference with Plaintiff's religious meals, and retaliation.

## A.  First Amendment Claims

### 1. Freedom of Religion

Plaintiff claims that Defendants Camp, Ellegood and Hay, in their official and individual capacities, denied Plaintiff the right to freely exercise his religious beliefs in violation of the First Amendment to the United States Constitution by denying Plaintiff's requests for a permanent vegetarian diet and for interfering with Plaintiff's religious fast during Ramadan.  The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

An inmate must be given a "reasonable opportunity" "to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." Cruz v. Beto, 405 U.S. 319, 322 (1972). An inmate's First Amendment rights, however, are not without restriction. Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996). The Turner rule adopted by the Supreme Court in Turner v. Safely, 482 U.S. 78, 85 (1987), employs a reasonableness standard for evaluating prison regulations that may infringe on an inmates' constitutional guarantees: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89.

In order to evaluate whether a prison policy infringes upon Plaintiff's constitutionally-protected right to the free exercise of religion, the Court must make two primary inquiries: (1) is the Plaintiff sincere in his asserted religious beliefs; and, (2) if the Plaintiff is sincere, and the regulation impinges on the free exercise of his religion, is the regulation reasonably related to legitimate penological interests. Martinelli v. Dugger, 817 F.2d 1499, 1503 (11th Cir. 1987), cert. denied, 484 U.S. 1012 (1988); Turner, 482 U.S. at 89-91; O'Lone v. Estate of Shabazz, 482 U.S. 342, 345 (1987). "An inmate requesting a special diet on the basis of a sincerely held religious belief, has 'a constitutionally protected interest upon  which the prison administration may not

unreasonably infringe.'" Williams v. Bitner, 455 F.3d 186, 192 (3d Cir. 2006)(citing Depart v. Horn, 227 F.3d 47, 53 (3d Cir. 2000)).

Here, it is undisputed that Plaintiff is a Muslim with a sincerely held religious belief; that Plaintiff requested to be placed on the jail's vegetarian religious diet list; and that Plaintiff requested to receive his meals at the appropriate time of day during Ramadan.   Moreover, it is clear that Lee County Jail had a policy to attempt to honor "all Muslim requests for religious vegetarian diets."   Doc. #75, Aff. Camp, Ex. 2.   Correctional officials were to accommodate "Muslims or other religions to have vegetarian diets, permitted that . . . Prison Health Services and Chaplain Gerald Camp approved of the same."   Doc. #75, Aff. Ellegood, Exhibit 1.   In fact, after Prison Health Services initially denied Plaintiff's request for a vegetarian diet, Defendant Camp placed Plaintiff on the November 2002 list for Ramadan.   See Id. Medical Request, Form Exhibit 1b; Muslim List for Ramadan, Exhibit 2a.   Admittedly, despite Plaintiff's name being added to this list, Plaintiff continued to encounter difficulties observing his holy fast due to the time of day his meals were served and the type of meals he received.   Plaintiff admits that Defendant Ellegood came and spoke to him after Ellegood received Plaintiff's grievance and agreed to address the meal issue with Trinity Food Services.   The evidence confirms that each of Plaintiff's grievances were in fact forwarded to Trinity Food

Services and marked to the attention of the "kitchen manager" or "Mike Hennessy."  Doc. #80, Pl. Response, Exhibits D, F, I and J.

The record clearly establishes that Trinity Food Services was responsible for providing inmates at the Lee County Jail with all meals, pursuant to contract between the Lee County Sheriff and Trinity Food Services.  In its contract, Trinity agrees to prepare meals in conformance with inmates' religious requirements. Doc. #75, Exhibit 1C.  More specifically the contract states:

> Trinity agrees to prepare meals to meet religious requirements as approved by the jail chaplain. Religious diet prescriptions will be specific and complete, furnished in writing to the food service manager, and rewritten monthly.  Special and religious diets will be kept as simple as possible and should conform as closely as possible to the food served to other inmates.

Id.

Pursuant to the terms of the contract, on November 5, 2002, Defendant Camp provided Trinity Food Services with a document entitled "Muslim List for Ramadhan" that identified the inmates who required religious diets.  Doc. #75, Aff. Camp, Exhibit 2-2(a). The "Muslim List for Ramadhan" included Plaintiff's name.  Doc. #75, Exhibit 2a.  Plaintiff acknowledges that Defendant Camp checked on Plaintiff to ensure he was receiving his religious diet from the kitchen.  AC at 11.  When Defendant Camp learned that Plaintiff was not receiving his meals, he immediately and "on numerous occasions in November and December 2002" contacted Trinity Food Services' supervisor.  Doc. #75, Aff. Camp, Exhibit 2.  Other correctional officers also attempted to correct the issues

involving the time of day that the Ramadan meals were served. Plaintiff acknowledges that "a memo was placed on the officers' station window indicating the time that the Islamic morning meal [was] to be served." AC at 14.  Additionally, in December 2002, Defendant Camp prepared a memo to Captain Perri in which Camp expressed "concern" over the kitchen's failure to provide a "proper religious diet."  Doc. # 75, Exhibit 2b.  Defendant Camp further explained that he previously provided the kitchen with a list of inmates who were to receive religious meals, but the kitchen informed him that the list was "'misplaced.'"  Id.  In the memo, Defendant Camp stressed that the diet "issue must be resolved with the kitchen." Id.   Again, on January 2, 2003, Defendant Camp provided a document to Mike Hennessy regarding "Religious Diets" that identified fourteen inmates, including Plaintiff, who were to receive religious vegetarian meals. Id. at Exhibit 2c.

Although Plaintiff contends that Defendants Camp and Ellegood denied him his religious meals, it is clear that Trinity Food Services was the entity who was responsible for failing to provide Plaintiff his meals in question.   To the extent that Plaintiff predicates liability on Defendants Ellegood and Camp based on their respective positions as Captain and Chaplain[2] such a theory is

----

[2]Plaintiff states in a grievance attached to his Complaint that "since [Ellegood] continue[s] to fail at regulating your subordinate official[s] from such constitutional violations via turning a deaf ear, the prisoner is left with no option but redress in Federal Court!" (Grievance dated 12/30/02.)

flawed.   As previously stated, a defendant who occupies a
supervisory position may not be held liable under a theory of
*respondeat superior* in a § 1983 action.  <u>Monell</u>, 436 U.S. 658, 690-
692.  Moreover, Plaintiff's claim that Defendants Camp or Ellegood
improperly addressed his grievances, or failed to adequately
address his grievances relating the his religious diet, fails to
state a § 1983 claim.   "[F]iling a grievance with a supervisory
person does not alone make the supervisor liable for the allegedly
violative conduct brought to light by the grievance, even if the
grievance is denied."  <u>Haverty v. Crosby</u>, No. 1:05-CV-00133, 2006
WL 839157, *5 (N.D. Fla. Mar. 28, 2006)(citations omitted).   To
imput a supervisor with knowledge, the knowledge "must be so
pervasive that the refusal to prevent harm rises to the level of a
custom or policy of depriving inmates of their constitutional
rights."  <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1542
(11th Cir. 1994).   Here, it is clear that Defendants Camp and
Ellegood referred Plaintiff's grievances concerning his religious
diet to Trinity Food Services.   Moreover, Defendants Ellegood and
Camp do not have authority over independent contractors, such as
Trinity.  Doc. #75, Aff. Ellegood Exhibit 1; Aff. Camp, Exhibit 2.
Thus, the record establishes that Defendants Ellegood and Camp did
not participate in the interference with Plaintiff's fast or his
religious vegetarian meals in either their individual or official
capacities, and in fact made repeated efforts to compel Trinity to
provide the meals at the appropriate times of day during Ramadan

and the appropriate type of meal, in this case vegetarian. Consequently, the Court will grant Defendants Camp and Ellegood summary judgment on this issue.

With regard to Defendant Hay, however, the record presents a question of material fact concerning Plaintiff's Ramadan meals on November 8, 2002, and November 14, 2002. On November 8, 2002, Plaintiff states that he did not eat his morning meal because it was served after sunrise, which violated the holy fast tenets. Then, for the evening meal, Defendant Hay told Plaintiff, "You will not be feed [sic]." Defendant Hay disputes Plaintiff's allegations and states that he offered Plaintiff his lunch and evening meal after sunset in accordance with the jail's policy, but "[Plaintiff] refused to accept [the meals] because he did not agree with what was being served to him." Doc. #75, Aff. Hay, Exhibit 3. The Court finds it incredulous that after fasting the entire day, Plaintiff would refuse the meal in its entirety and not eat even a portion of the meal. Again, on November 14, 2002, Plaintiff states that Defendant Hay conducted a shake down of Plaintiff's cell and removed part of Plaintiff's evening Ramadan meal. Specifically, Plaintiff states, Defendant Hay "went through the prisoner's religious holy fast meal and took the portion of [Plaintiff's] peanut butter and left his milk, bread, and fruit." Defendant Hay does not dispute that he removed the peanut butter. Defendant Hay states:

> I found a cup of peanut butter that Plaintiff was trying to save until later.  I removed the peanut butter because it is a common practice within the jail for inmates to either barter the items or to save the items for later . . . This goes against jail policy as we do not allow food items in the jail cells for extended periods of time. It is unsanitary to leave food items in jail cells for extended periods of time, as rodents and bugs can get into the  cells and infest the entire jail. Doc. #75 Aff. Hay, Exhibit 3.

As previously stated, a memo placed on the officer's station window advised officers that inmates observing the Ramadan fast were to receive their meals before sunrise and after sunset. Plaintiff explains in his Response that the Ramadan meal remained in his cell around 9 p.m. because he had not been given time to eat the meal before being escorted to the shower.  Doc. #80, Pl. Response at 3-4.  Further, the Court notes that even if jail policy did not permit inmates to keep food in their cells "for extended periods of time" as Defendant Hay states, only the protein portion (the peanut butter) of Plaintiff's Ramadan meal was confiscated while the remaining food items including milk, bread, and fruit were left for Plaintiff.  For these reasons, the record presents questions of material fact involving Defendant Hay's interference with Plaintiff's meals in observance of Ramadan. Consequently, Defendant Hay's Motion for Summary Judgment regarding Plaintiff's freedom of religion claim is denied.

## 2. Retaliation

An essential element of a First Amendment retaliation claim is the existence of a retaliatory motive.  See Gattis v. Brice, 136

F.3d 724, 726 (11th Cir. 1998) ("To succeed in a § 1983 suit based on a claim of retaliation for speech, the plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision."). Thus, in the instant case, Plaintiff must be able to demonstrate a "causal connection" between the adverse action taken against Plaintiff and the exercise of Plaintiff's free speech rights. Farrow v. West, 320 F.3d 1235, 1240 (11th Cir. 2003). See also Osterback v. Kemp 300 F. Supp. 2d 1238 (N.D. Fla. 2003). Plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted).

With regard to Plaintiff's retaliation claim against Defendant Camp, Plaintiff claims that on March 21, 2003, in retaliation for filing the action *sub judice*, Defendant Camp "maliciously and vindictively totally removed" Plaintiff's name from the religious vegetarian diet list and restricted his purchases at the canteen. Defendant Camp submits evidence that he has "no authority to deny canteen [purchases] and did not do so. Documentation used by the Canteen Department comes from the kitchen, not the Chaplain's office. Nothing was submitted in March 2003 to canteen by the Chaplain's office." Doc. #75, Aff. Camp, Exhibit 2. Here, Plaintiff comes forward with no evidence to support a retaliatory motive, other than his own wholly conclusory allegations that

Defendant Camp's actions were retaliatory in nature.  Courts are not to infer causation or construe legal conclusions as facts. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242 (11th Cir. 2005).  Consequently, the Court will grant Defendant Camp summary judgment on the retaliation issue.

With regard to Defendant Hay, Plaintiff claims that the day after Plaintiff filed a grievance regarding Defendant Hay, Defendant Hay entered Plaintiff's cell to conduct a shake down and asked Plaintiff why he continued to file complaints against him. Defendant Hay proceeded to search Plaintiff's cell, removed "a couple of [Plaintiff's] sworn affidavits," took Plaintiff's peanut butter, removed Plaintiff's medical blanket, and ordered another officer to write Plaintiff two disciplinary reports.  Defendant Hay states in his Affidavit that he removed the peanut butter from Plaintiff's cell because jail policy does not allow food to be in cells for extended periods of time. Doc. #75 Aff. Hay, Exhibit 3. Defendant Hay does not address Plaintiff's allegations concerning Plaintiff's legal documents or medical blanket.  Plaintiff attaches as evidence to his Response four affidavits from inmate witnesses who substantiate the facts as alleged by Plaintiff, stating in pertinent part that they heard Defendant Hay ask Plaintiff why he continues to file grievances about him and heard Defendant Hay tell another officer to write two disciplinary reports on Plaintiff because the officer needed practice writing reports.  Doc. #80, Pl. Response at  11-14.   Plaintiff has made a showing sufficient to

-17-

permit a reasonable jury to find that his filing of grievances and complaints was a substantial or motivating factor behind Defendant Hay's actions.  Consequently, Defendant Hay's Motion for Summary Judgment regarding the retaliation claim is denied.

### 3.   Qualified Immunity

In response to Plaintiff's claims, Defendant Hay asserts that he is entitled to the affirmative defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from civil trials for money damages and prevents them from being held liable in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  D'Aguanno v. Gallagher, 50 F.3d 877, 879 (11th Cir. 1995) (citations and quotations omitted).  Once the public official has proven that he was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

At the time complained of in the Amended Complaint, Defendant Hay was employed by the Lee County Sheriff's Department as a correctional officer at the Lee County Jail. In this case, it is clear and undisputed that Defendant Hay was acting within his discretionary authority.

> The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake

-18-

> in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 735 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). If a constitutional right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201; see also Lee, 284 F.3d at 1194.

Vinyard v. Wilson, 311 F.3d 1340, 1346-47 (11th Cir. 2002).  This Court has already determined that Plaintiff's factual allegations in the Amended Complaint state First Amendment violations for religious freedom and retaliation against Defendant Hay.  Based on pre-existing law, this Court concludes that Defendant Hay had a fair and clear warning that his  conduct was unlawful.  Cruz v. Beto, 405 U.S. 319; Farrow v. West, 320 F.3d 1235.  Consequently, based upon the current record the Court concludes that Defendant Hay is not entitled to qualified immunity.

**IV.**

As noted above, service process of process has not been effectuated upon Defendants Withrow and Brooks.  While the Court is responsible for assisting *pro se* litigants proceeding *in forma pauperis* with service of process, the Court cannot meet this responsibility when a plaintiff fails to provide the Court with a valid address for a defendant.  See 28 U.S.C. §1915(d); Fowler v. Jones, 899 F.2d 1088, 1095 (11th Cir. 1990).  The Court is also responsible for seeing that its limited resources are allocated in

-19-

a way that promotes the effective and efficient administration of the judicial system.

Pursuant to Fed. R. Civ. P. 4(m), a district court may dismiss an action *sua sponte* if service is not effectuated within 120 days after the filing of the complaint. Plaintiff's Complaint was filed on January 2, 2003. The U.S. Marshal's attempts to effectuate service upon Defendant Withrow and Brooks have been unsuccessful. Docs. # 34, 70. Consequently, Defendants Withrow and Brooks are dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants Hay, Ellegood and Camp's Joint Motion for Summary Judgment (Doc. #75) is **GRANTED IN PART AND DENIED IN PART.**

    a. The Motion for Summary Judgment is **GRANTED** as to Defendants Ellegood and Camp.

    b. The Motion for Summary Judgment is **DENIED** as to Defendant Hay.

2. Defendants Withrow and Brooks are dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

3. The Clerk of Court shall enter judgment as to Defendants Camp, Ellegood, Withrow and Brooks.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___27th___ day of September, 2006.

JOHN E. STEELE
United States District Judge

-20-

SA:   alj/hmk
Copies: All Parties of Record